# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

_____

LAURA AUBERT,

       Plaintiff,

       v.                                No. 18-CV-0118-WJ-LF

CENTRAL NEW MEXICO COMMUNITY
COLLEGE, KRISTEN COULTAS-KAY,
Individually and officially, RANDOLPH
CRANDALL, individually and officially,
KAREN MONTOYA, individually and officially,
RUDY GARCIA, individually and officially,
KATHARINE WINOGRAD, officially,
and CRAIG VANDERPLOEG, individually,

       Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS CENTRAL NEW MEXICO COMMUNITY COLLEGE, KRISTIN COULTAS-KAY, RANDOLPH CRANDALL, KAREN MONTOYA, RUDY GARCIA, AND KATHARINE WINOGRAD'S AMENDED MOTION TO DISMISS COUNTS 1 AND 2 OF PLAINTIFF'S FIRST AMENDED COMPLAINT AND FOR QUALIFIED IMMUNITY

THIS MATTER comes before the Court upon Defendants Central New Mexico Community College ("CNM"), Randolph Crandall ("Crandall"), Karen Montoya ("Montoya"), Rudy Garcia ("Garcia"), and Katharine Winograd ("Winograd"), collectively the "CNM Defendants,"[1] *Amended Motion to Dismiss Counts 1 and 2 of Plaintiff's First Amended Complaint and for Qualified Immunity* (**Doc. 44, filed 7/26/18**). Having reviewed the parties' briefs (Docs. 44, 49, 53) and the applicable law, the Court **DENIES** CNM's Motion to Dismiss Count 1 for Failure to State a Claim, **DENIES** CNM's Motion to Dismiss Count 2 for Failure to State a Claim,

_____

[1]     Defendant Craig Vanderploeg is not part of the collective "CNM Defendants" who have made the present motion.

and **GRANTS** the individual CNM Defendants' Motions to Dismiss Count 2 for Qualified Immunity.

## BACKGROUND

Plaintiff Laura Aubert ("Plaintiff") has brought suit based on alleged sexual harassment and assault by Defendant Craig Vanderploeg, who was employed as a tutor by CNM at one of its educational learning centers. The Court previously granted Plaintiff's Motion to File First Amended Complaint (Doc. 39), and Plaintiff filed her First Amended Complaint on July 19, 2018. Doc. 42. Plaintiff asserts two counts against the collective CNM Defendants, and several counts against Defendant Vanderploeg (who is not included in the collective group known as "CNM Defendants"). After Plaintiff filed her First Amended Complaint ("FAC"), the Court permitted Defendants to refile an *Amended Motion to Dismiss Counts 1 and 2 of Plaintiff's First Amended Complaint and for Qualified Immunity*, which is presently in front of the Court. Doc. 44.

In Count 1, Plaintiff alleges violation by CNM of Title IX of the Education Amendments of 1972 ("Title IX"). Doc. 42 at 11. In Count 2, Plaintiff alleges violation by all CNM Defendants of her civil rights pursuant to Title IX and Equal Protection under the Fourteenth Amendment. Doc. 42 at 17. She names Kristen Coultas-Kay, Randolph Crandall, Karen Montoya, and Rudy Garcia in their individual and official capacities. Plaintiff names Katharine Winograd in her official capacity only. Defendants contend that Plaintiff has failed to state a claim against any of the CNM Defendants, that the individual CNM Defendants are entitled to qualified immunity, and that the official capacity claims should be dismissed. For the following reasons, the Court finds that Plaintiff has stated a claim pursuant to Title IX and § 1983 against Defendant Central New Mexico Community College in Counts 1 and 2, and that the claims against individual CNM Defendants in Count 2 should be dismissed for qualified immunity.

In reviewing a Motion to Dismiss, the Court construes as true the facts, but not the legal conclusions, presented in the plaintiff's complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussed *infra*). Thus construed, the First Amended Complaint presents the following events.

Plaintiff was a student at Central New Mexico Community College when she began to work with a tutor (Defendant Craig Vanderploeg, hereinafter "Tutor") at the CNM Student Resource Center (hereinafter the "Learning Center") in February 2015. Plaintiff sensed that Tutor "wanted to be more than friends" (Doc. 42, ¶ 16), and she advised him that she was not interested. Tutor continued to pursue Plaintiff, which made Plaintiff uncomfortable. Tutor informed Plaintiff that he would not help her anymore if she refused his advances. Plaintiff felt she was under Tutor's increasing control. On two occasions, Plaintiff had sexual intercourse with Tutor at his home.

At some point, Tutor told Plaintiff that he had been approached by one of the Learning Center supervisors, Defendant Randolph Crandall ("Crandall"), about his relationship with Plaintiff. Tutor told Plaintiff that he lied and said they were friends. Crandall told Tutor to circulate and not spend all his time with Plaintiff. Tutor told Plaintiff their relationship was not against the rules. Plaintiff realized she could not trust Tutor after he told her about the lie to Crandall.

Approximately a week later, likely in early April, Plaintiff went to the Learning Center, which was crowded and noisy. She met with Tutor, and Tutor led her to a cubicle so they would have "more room and time to focus on tutoring." Doc. 42, ¶ 27. While Plaintiff was doing her work, Tutor grabbed her breasts, forced her hand over his crotch, and whispered that she was "making him hard." Doc. 42, ¶ 27. Plaintiff pushed Tutor away, as she was shocked and frightened. She told him that his conduct was not acceptable and that she wanted him to stop making sexual advances toward her. She gathered her belongings and Tutor became angry. Plaintiff began to cry.

Tutor told Plaintiff that if she did not have sexual intercourse with him, he would make sure she failed her math course.

As Plaintiff left the Learning Center in tears, Crandall called out to her to sign out, but she was too upset to do so. She saw Crandall call Tutor over, but Plaintiff does not know what was said. Over the following several days, Plaintiff received more than one hundred phone calls from Tutor, who even left a message saying that he had her address and he would go to her home if she continued to ignore him.

Around April 6, 2015, four days after the cubicle incident, Plaintiff went to the Learning Center. Plaintiff searched for Crandall, but she could not find him. Plaintiff found Defendant Kristen Coultas-Kay ("Coultas-Kay'), another Learning Center supervisor. Plaintiff told Coultas-Kay of being violated by Tutor the previous week at the Learning Center, and of his ongoing harassment. Specifically, Plaintiff told Coultas-Kay that Tutor had grabbed her breasts, forced her hand over his crotch, and whispered that she was making him hard in the cubicle. Plaintiff also stated that she had engaged in sexual intercourse with Tutor, and that Tutor had told Plaintiff he could make sure she failed math if she did not continue to have sex with him. Plaintiff told Coultas-Kay that Tutor called her over one hundred times in the few days since the cubicle incident.

Plaintiff told Coultas-Kay she wanted to talk to Crandall after he returned to the office. Coultas-Kay left a telephone message for Crandall while Plaintiff waited. Coultas-Kay assured Plaintiff that Crandall would call her later that day. Two days later, Plaintiff had not heard from Crandall or anyone about her report of Tutor's misconduct. Plaintiff returned to the Learning Center again, where Coultas-Kay told Plaintiff that Crandall was aware of the situation, as she had spoken with him after the meeting with Plaintiff.

For approximately a month and a half, Plaintiff did not hear anything about her complaint. Tutor continued to work in the Learning Center and Plaintiff purposefully avoided him so she could continue to obtain tutoring. Plaintiff had high stress and anxiety levels during this time. Tutor continued to text Plaintiff about wanting to see her and have sex with her. In May 2015, Plaintiff learned from her house-sitter that Tutor had come to her apartment looking for her when she was not there.

On May 20, 2015, Plaintiff called CNM Human Resources to "report the Tutor's conduct and her concerns." Doc. 42, ¶ 41. Plaintiff left a voicemail and did not receive a call back. On the same day, Plaintiff emailed the Dean of Students, Defendant Dean Rudy Garcia ("Dean Garcia"), via cnm.edu on her phone, "stating that she had been subjected to sexual misconduct by a tutor." Doc. 42, ¶ 42. Plaintiff requested to be contacted, but she was not.

On May 26, 2015, Plaintiff went to see Dean Garcia. He advised that he had not received her email. Dean Garcia told Plaintiff that she would have to file a report with campus security before any action could be taken. Campus security was dispatched to take an incident report.

On June 9, 2015, CNM HR consultant Defendant Karen Montoya ("Montoya") met with Plaintiff and Plaintiff's friend. Plaintiff informed Montoya about "the whole story, including her report to Ms. Coultas-Kay." Doc. 42, ¶ 44. Plaintiff gave Montoya copies of the handwritten notes from Tutor, copies of her own journal entries, and copies of the emails to HR and the Dean of Students. Plaintiff asked Montoya if she would provide Plaintiff with a copy of her notes for Plaintiff's review after the meeting, but Montoya never gave Plaintiff the notes.

Tutor resigned on June 11, 2015, soon after receiving a Pre-Termination Notice that referenced an "ongoing pattern of questionable conduct and extremely poor judgment." Doc. 42, ¶¶ 47–49. In late June, Plaintiff found out about Tutor's resignation. After he resigned, CNM

treated Plaintiff's complaint as moot and failed to make findings and conclusions. Plaintiff sent Dean Garcia a letter of complaint on July 11, 2015. Plaintiff emailed President Katharine Winograd on August 8, 2015, addressing her ongoing concerns about Tutor's conduct, his future employment in education, her safety and that of other students, her need for additional tutoring to pass math and graduate, and her emotional distress. On July 20, 2015, the director of CNM Disability Resource Center, Mark Cornett, wrote to Plaintiff that he would work with Human Resources to make sure that Tutor did not receive a positive employment reference.

Someone advised Plaintiff to obtain tutoring in another location than the tutoring center. CNM did not provide Plaintiff with adequate counseling resources or tutoring resources. Plaintiff received an incomplete in her math course, but she completed the class the next semester without help or assistance from CNM. Plaintiff graduated from CNM in December 2015 and attends UNM full time. She sees Tutor in campus at UNM, where he is employed. At the time relevant to Plaintiff's allegations, CNM did not have Title IX policies or grievance procedures, or a Title IX coordinator.

## DISCUSSION

### I. Legal Standard: Motion to Dismiss for Failure to State a Claim

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court may dismiss a claim upon a defendant's challenge that the plaintiff either has failed to assert a cognizable legal theory as a matter of law or has failed to sufficiently allege plausible facts in support of the complaint. Fed. R. Civ. P. 12(b)(6). The Supreme Court of the United States has established a two-part examination of the factual sufficiency of a complaint to survive a motion to dismiss for failure to state a claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 551 (2007). First, the court must accept well-pleaded factual allegations as true, but the court is not bound to accept as true a legal

conclusion that is "couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). After distinguishing between factual assertions and legal conclusions, the court then determines whether the factual allegations, when taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

Thus, to survive a motion to dismiss for failure to state a claim, "a complaint must plead facts sufficient to state a 'claim to relief that is plausible on its face.'" *Sylvia v. Wisler*, 875 F.3d 1307, 1313 (10th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (citation and quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The court must construe reasonable inferences in the light most favorable to the plaintiff. *Id.* (citation and quotation marks omitted). As the Tenth Circuit has explained, "we look to the elements of the particular cause of action, keeping in mind that the Rule 12(b)(6) standard doesn't require a plaintiff to set forth a prima facie case for each element." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (citation and quotation marks omitted). Still, the plaintiff must allege sufficient facts that rise above speculation or mere conclusions, as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Supreme Court has noted that this examination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## II. Analysis: Plaintiff's claim against CNM for violation of Title IX of the Education Amendments of 1972 (Count 1)

### A. Law on Title IX

Title IX of the Education Amendments of 1972 prohibits universities that receive federal financial assistance from discriminating on the basis of gender. *See* 20 U.S.C. § 1681(a). The Tenth

Circuit has explained that "[s]exual harassment is a form of discrimination on the basis of sex and is actionable under Title IX." *Escue v. Northern Okla. College*, 450 F.3d 1146, 1152 (10th Cir. 2006). Title IX "is enforceable through an implied private right of action for which money damages are available." *Murrell v. School Dist. No. 1*, 186 F.3d 1238, 1245–46 (10th Cir. 1999). A school is not vicariously liable to its students for all sexual harassment, as under Title IX, "a student may hold a school liable 'only for its own misconduct.'" *Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 640 (1999). To impose liability upon a school pursuant to Title IX, the plaintiff must demonstrate that the school "(1) has actual knowledge of, and (2) is deliberately indifferent to, (3) harassment that is so severe, pervasive and objectively offensive as to (4) deprive access to the educational benefits or opportunities provided by the school." *Rost v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1119 (10th Cir. 2008) (citing *Murrell*, 186 F.3d at 1246).

Regarding the first element, the school can obtain actual knowledge only through an "appropriate person." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). An appropriate person "is, at a minimum, an official of the [university] with authority to take corrective action [on behalf of the university] to end the discrimination." *Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1283 (10th Cir. 2017) (quoting *Gebser*, 524 U.S. at 290).

Regarding the second element, a university is considered "deliberately indifferent" after receiving actual notice "only where the [university's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 1287 (quoting *Davis*, 526 U.S. at 648). The Circuit has explained that "[t]he Supreme Court has noted that administrators need not 'engage in particular disciplinary action' under Title IX, but only respond in a manner that is not clearly unreasonable." *Rost*, 511 F.3d at 1123 (quoting *Davis*, 526 U.S. at 648–49).

**B.    Plaintiff has plausibly pleaded the actual notice requirement.**

Defendant CNM argues that Plaintiff has not plausibly pleaded the actual notice requirement. Doc. 44 at 12. In her First Amended Complaint, Plaintiff puts forward several grounds that she argues make Coultas-Kay and Crandall appropriate persons to obtain actual notice under Title IX. She asserts that Coultas-Kay and Crandall "[a]t a minimum, both had the supervisory authority to initiate an investigation and take immediate action to suspend their subordinate Tutor from further tutoring." Doc. 42, FAC, ¶ 83. She also states that the CNM Code of Conduct and Workplace Behavior "imposes a duty on teachers to convey reports of sexual harassment to school principals." Doc. 42, FAC, ¶¶ 84–85. For the reasons described below, the Court finds that Plaintiff has sufficiently pleaded that Coultas-Kay and Crandall are "appropriate persons" because they "both had the supervisory authority" including to "take immediate action to suspend their subordinate Tutor from further tutoring." Doc. 42, FAC, ¶ 83. Thus, the Court does not address the other grounds argued by Plaintiff.[2]

At this stage, Plaintiff is required to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Plaintiff alleges that "Ms. Coultas-Kay's title was Learning Center Supervisor, at the CNM Assistance Centers for Education. She took Ms. Aubert's report of her Tutor's misconduct in her capacity as the Tutor's supervisor, and assured Ms. Aubert that her report would be acted on appropriately, in her capacity as a CNM authority." Doc. 42, FAC, ¶ 78. Plaintiff also alleges that "Mr. Crandall had the same job title as Ms. Coultas-Kay. He

---

[2] The Tenth Circuit has, however, commented on both arguments. *See Ross v. Univ. of Tulsa*, 859 F.3d 1280, 1290 (10th Cir. 2017) ("And merely passing on a report of sexual harassment to someone authorized to take corrective action is not itself corrective action."); *id.* ("For example, consider a school where every employee receiving a report of sexual harassment must convey the report to the principal. If one employee fails to convey a report to the principal, that failure could be attributed to the school as a whole. This type of vicarious liability is precisely what the Supreme Court sought to avoid through the deliberate-indifference standard."). While the parties have briefed these arguments, it is not necessary for the Court to rule on whether these assertions constitute grounds for stating a claim under Title IX because Plaintiff has otherwise met the standard.

was a Learning Center Supervisor." Doc. 42, FAC, ¶ 83. Plaintiff further alleges that "[b]oth Mr. Crandall and Ms. Coultas-Kay had supervisory authority over the Tutor." *Id.* Specifically, Plaintiff alleges that in this case such authority included, "at a minimum," the authority to "take immediate action to suspend their subordinate Tutor from further tutoring." *Id.* She pleads they were individuals "with authority to address the Tutor's conduct." Doc. 42, FAC, ¶ 86. Based on these factual allegations, Plaintiff claims that Coultas-Kay and Crandall possessed supervisory authority over Tutor such that they could have taken corrective action sufficient to satisfy the Title IX requirement for being appropriate persons to receive actual notice of Tutor's sexual harassment. *See Ross*, 859 F.3d at 1283 ("An appropriate person 'is, at a minimum, an official of the [university] with authority to take corrective action [on behalf of the university] to end the discrimination.'" (quoting *Gebser*, 524 U.S. at 290)).

The Court disagrees with Defendants' contention that "two supervisors in a tutoring center could not plausibly be considered school officials or have the authority to discipline or suspend another employee." Doc. 44 at 13. As the Tenth Circuit explained in *Murrell*,

> We decline simply to name job titles that would or would not adequately satisfy this requirement. School districts contain a number of layers below the school board: superintendents, principals, vice-principals, and teachers and coaches, not to mention specialized counselors such as Title IX coordinators. Different school districts may assign different duties to these positions or even reject the traditional hierarchical structure altogether. Because officials' roles vary among school districts, deciding who exercises substantial control for the purposes of Title IX liability is necessarily a fact-based inquiry.

186 F.3d at 1247.

Considering this guidance from the Circuit, the Court is not convinced that two supervisors could not plausibly have the authority to discipline or suspend a non-supervisory tutor employee in the Learning Center upon receiving a complaint of sexual harassment from a student. Plaintiff

points out, "[i]t can also be reasonably inferred that as his supervisors, they had power to take some action against him which would have ended his sexual harassment of Plaintiff, even if they could not have fired him outright, which Plaintiff does not know and has not pled." Doc. 49 at 11. It is a plausible and non-conclusory allegation that as supervisors in the Learning Center, Coultas-Kay and Crandall had some authority from the school to discipline or monitor Tutor in a way that would have minimized, if not eliminated, Tutor's sexual harassment of Plaintiff. The Court considers more than the label of "supervisor" in these job titles. The allegation that Coultas-Kay had some authority to take corrective action is supported by Plaintiff's factual allegations that Coultas-Kay took the report from Plaintiff, that Coultas-Kay assured Plaintiff that the report would be acted on appropriately, that Coultas-Kay made this assurance as a CNM employee, and that Coultas-Kay assured Plaintiff that Crandall was also aware of the report and that Plaintiff "did not have to do anything else." Doc. 42, FAC, ¶¶ 78, 80. Plaintiff alleges that Crandall had the same position as Coultas-Kay, that Coultas-Kay reported Plaintiff's complaint to Crandall, and that prior to Coultas-Kay's report, Crandall had already instructed Tutor to circulate with students other than Plaintiff. Doc. 42, ¶¶ 32, 34.

Under Tenth Circuit law, Plaintiff has plausibly alleged facts to support the legal position that Coultas-Kay and Crandall had "at a minimum, . . . authority to take corrective action [on behalf of the university] to end the discrimination." *Ross*, 859 F.3d at 1283 (quoting *Gebser*, 524 U.S. at 290). The Court disagrees with CNM Defendants that it is implausible that two employees in the Learning Center with the title "supervisor" could not, as a matter of law, meet the definition of an appropriate person with authority on behalf of the institution to take corrective action against

sexual discrimination.[3] For these same reasons, the Court rejects Defendants' contention that Plaintiff has only pleaded the theory of *respondeat superior* grounded in negligence.[4]

### C. Plaintiff has plausibly pleaded the deliberate indifference requirement.

As Plaintiff has sufficiently alleged that Coultas-Kay and Crandall are appropriate persons to receive actual notice under Title IX, the Court now turns to whether Plaintiff has plausibly alleged that CNM's response amounted to deliberate indifference. A university is considered "deliberately indifferent" after receiving actual notice "only where the [university's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Ross*, 859 F.3d at 1287 (quoting *Davis*, 526 U.S. at 648). The university's response is deliberately indifferent when it, "at a minimum, cause[s] students to undergo harassment or make them liable or vulnerable to it." *Davis*, 526 U.S. at 645 (quotation marks and citation omitted). The Tenth Circuit has stated that "[s]chool administrators need not engage in particular disciplinary action, and victims do not have a right to seek particular remedial demands." *Escue*, 450 F.3d at 1155. Still, the Circuit has noted that a "minimalist response is not within the contemplation of a reasonable response[.]" *Id.* (citation omitted).

Plaintiff alleges as follows:

> Crying, she told Ms. Coultas-Kay of being violated by the Tutor the previous Thursday, and of his ongoing harassment and threats. Specifically, Ms. Aubert told Defendant Coultas-Kay that Defendant Vanderploeg had grabbed her breasts, forced her hand over his crotch, and whispered that she was making him hard, in the tutoring center cubicle; that Defendant Vanderploeg had had sexual intercourse with her, and had told her he could make sure she failed math if she did not continue to have sex with him; that Defendant Vanderploeg had told her he would not help

---

[3]    Defendants cite to the ruling in *Ross* that the security officers, as a matter of law, were not appropriate persons. Doc. 44 at 10. As Plaintiff points out, *Ross* was a ruling on summary judgment. Doc. 49 at 14.

[4]    For reasons explained below, it is not necessary for the Court to address whether Plaintiff has adequately pleaded Title IX claims involving the conduct of Montoya and Garcia because Plaintiff has otherwise stated a Title IX claim to survive the Motion to Dismiss. The parties agree that Defendant's meeting with Dean Garcia on May 26, 2015, established actual notice of sexual harassment. Doc. 49, at 13; Doc. 44 at 14.

her if she refused his advances; and that Defendant Vanderploeg had called her over 100 times since he had assaulted her.

Doc. 42, FAC, ¶ 31. Plaintiff alleges that when she went back to the Learning Center, Coultas-Kay told her that she had informed Crandall. Doc. 42, FAC, ¶ 34. Plaintiff alleges that "[t]here is no indication that Ms. Coultas-Kay and/or Mr. Crandall took any action at all." Doc. 42, FAC, ¶ 42. As a result, Plaintiff alleges that prior to her complaint to Dean Garcia on May 26, 2015, Tutor "continued to have access to Ms. Aubert's file. He continued to call and text her about sex. He showed up at her apartment, having obtained her address from her file." Doc. 42, FAC, ¶ 88. Plaintiff asserts that "CNM was deliberately indifferent to the Tutor's misconduct by failing to take timely and reasonable measures to end the substantial risk of ongoing harassment created by the Tutor's harassment of Ms. Aubert, evident to CNM no later than Ms. Aubert's report to Ms. Coultas-Kay and Mr. Crandell." Doc. 42, FAC, ¶ 102.

Plaintiff has sufficiently pleaded deliberate indifference by alleging that, after receiving the report of Tutor's sexual harassment against Plaintiff on or about April 6, 2015, Coultas-Kay and Crandall took no action other than Coultas-Kay informing Crandall about the cubicle incident. The known circumstances to Coultas-Kay and Crandall, as alleged by Plaintiff, were allegations of sexual harassment that included sexual assault at the Learning Center and threats by Tutor that he would cause Plaintiff to fail her math course if she did not continue to have sex with him. Doc. 42, FAC, ¶ 31. Plaintiff's allegation that Coultas-Kay told Crandall and then neither took further action to end the discrimination supports an inference that Coultas-Kay and Crandall were deliberately indifferent and not merely negligent. The known circumstances, as Plaintiff has alleged she described them to Coultas-Kay and taken as true, involved ongoing sexual harassment, such that Plaintiff's allegation that Coultas-Kay and Crandall failed to take any corrective action to end or address the discrimination could plausibly constitute a clearly unreasonable response.

Plaintiff alleges that she was subjected to ongoing sexual harassment in the time between her report to Coultas-Kay on April 6, 2015, and the report to Dean Garcia and campus police on May 26, 2015. Doc. 42, FAC, ¶ 88. Thus, even if the school did initiate an investigation after Dean Garcia met with Plaintiff on May 26, 2015, such measures were not timely to prevent the harassment that occurred prior to that meeting. *See Escue*, 450 F.3d at 1155.[5] Plaintiff has thus adequately pleaded that university's lack of response to her report on April 6, 2015, caused her to undergo further harassment. *See Davis*, 526 U.S. at 645.

Defendant CNM further argues that Plaintiff has not alleged that the harassment continued on campus after her report to Coultas-Kay, or that Plaintiff reported the off-campus harassment to officials. Doc. 53 at 5. The Tenth Circuit has explained that when some part of the sexual harassment takes place off campus, "there must be some nexus between the out-of-school conduct and the school" to impose liability under Title IX. *Rost*, 511 F.3d at 1121 n.1. Plaintiff's factual allegations that Tutor accessed her personal information from her school file (Doc. 42, FAC, ¶ 74), that he threatened to cause her to fail math class if she did not continue to have a sexual relationship with him (Doc. 42, FAC, ¶ 31), that he threatened to withhold tutoring services from her if she refused him (Doc. 42, FAC, ¶ 71), and that the harassment occurred while she was enrolled as a student and receiving tutoring from an employee at the CNM Learning Center/Student Resource

---

[5]       The Tenth Circuit is considering the issue of whether a plaintiff is required to show that he or she was subjected to actual further sexual harassment after his or her report of sexual harassment was made to an appropriate person, or whether it is sufficient for a plaintiff to plead or prove that he or she was only made vulnerable or liable to ongoing harassment. *See Weckhorst v. Kansas State Univ.*, 241 F. Supp. 3d 1154 (D. Kan. 2017), *appeal docketed*, Nos. 17-3208 & 17-3208 (10th Cir. Sept. 26, 2017). The Court does not anticipate that the resolution at the Circuit will affect the Court's ruling on deliberate indifference under the Title IX claim at this stage because Plaintiff has plausibly pleaded that she was subjected to actual sexual harassment after she made her report to Coultas-Kay on or about April 6, 2015.

The parties have referenced the pending appeal in front of the Tenth Circuit in their briefs (see Doc. 53 at 6–7, Doc. 49 at 17) but have not requested supplemental briefing or a stay at this time. To the extent that the parties wish to address *Weckhorst*, whenever it is handed down, the parties may move the Court for such an opportunity, if and when appropriate.

Center (Doc. 42, FAC, ¶¶ 7, 9–12) plausibly supports a nexus such that the school "exercise[d] substantial control over both the harasser and the context in which the known harassment occur[red]." *Davis*, 526 U.S. at 645.

Finally, Defendants do not argue that Plaintiff has failed to adequately allege the third and fourth elements of the Title IX claim, and she has adequately pleaded them. *See* Doc. 44 at 1 n.1; *Rost*, 511 F.3d at 1119 ("(3) harassment that is so severe, pervasive and objectively offensive as to (4) deprive access to the educational benefits or opportunities provided by the school."); *see, e.g.*, Doc. 42, FAC, ¶¶ 71, 72, 74, 77, 103.

Considered in the light most favorable to Plaintiff, the Court finds that Plaintiff has plausibly pleaded facts to support a reasonable inference that CNM received actual knowledge of Tutor's sexual harassment. Plaintiff has also plausibly pleaded sufficient facts to support her claim that Coultas-Kay and Crandall were deliberately indifferent to her report. **Plaintiff has therefore stated a claim under Title IX.**

### III. Analysis: Plaintiff's claim against CNM Defendants for violation of Equal Protection and Title IX (Count 2)

The Fourteenth Amendment states that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Section 1983 provides that a person acting under color of state law who "subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. The Tenth Circuit has explained that "[s]exual harassment by a state actor may violate the equal protection clause." *Rost*, 511 F.3d at 1124.

### A. Section 1983 claim against CNM for violation of Title IX

The parties agree that Plaintiff can bring a § 1983 claim against CNM for violation of Equal Protection simultaneously to bringing a Title IX claim, but the parties dispute whether Plaintiff can bring a § 1983 suit *based* on a violation of Title IX. The parties both point to the Supreme Court's ruling in *Fitzgerald v. Barnstable School Communities*, in which the Supreme Court ruled that Congress did not intend for Title IX to preclude a plaintiff's option of bringing a concurrent or parallel §1983 constitutional lawsuit. 555 U.S. 246, 255–56 (2009). Plaintiff now argues that, through a door left open in *Fitzgerald*, she can use §1983 as a mechanism to assert her statutory rights granted under Title IX. *See id.* at 252 (discussing the standards for "those cases in which the § 1983 claim is based on a statutory right," which requires the court to discern congressional intent from the statute).

The Court agrees with Defendant CNM that allowing Plaintiff to assert a § 1983 claim based on a violation of Title IX would be duplicative because, although Title IX does not expressly provide for a private remedy, the Supreme Court has long "recognized an implied private right of action" under Title IX. *Fitzgerald*, 555 U.S. at 255. Plaintiff claims *Fitzgerald* allows her argument, but the *Fitzgerald* Court noted several times that its ruling was applicable to constitutional suits brought under § 1983. *See, e.g.*, *id.* at 256 ("Mindful that we should not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for a *substantial equal protection claim*, we see no basis for doing so here." (emphasis added)). In holding "that § 1983 suits *based on the Equal Protection Clause* remain available to plaintiffs alleging unconstitutional gender discrimination in schools[,]" the Court never mentioned allowing Title IX to underlie a statutory § 1983 claim alongside an independent Title IX claim. *Id.* at 258 (emphasis added). To allow Plaintiff to do so now would expand the Supreme Court's ruling in *Fitzgerald* past allowing a concurrent § 1983 Equal Protection claim, which would be inconsistent with a plain reading of

*Fitzgerald*.[6] **Plaintiff has therefore failed to state a claim for a statutory violation of Title IX under § 1983.**

### B.        Section 1983 claim against CNM for violation of Equal Protection

In *Fitzgerald*, the Supreme Court compared the two standards for § 1983 municipal liability and Title IX liability:

> Even where particular activities and particular defendants are subject to both Title IX and the Equal Protection Clause, the standards for establishing liability may not be wholly congruent. For example, a Title IX plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference. A plaintiff stating a similar claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice.

555 U.S. at 257–58 (citations omitted). The Tenth Circuit provided guidance in *Rost v. Steamboat Springs RE-2 School District*, in which the Circuit stated,

> A school district's liability for sexual harassment under the Equal Protection clause is analyzed under a municipal liability framework. A claim of municipal liability for sexual harassment requires that the state employee's discriminatory conduct be representative of an official policy or custom of the institution, or are taken by an official with final policymaking authority. In the absence of an official policy, a municipality may be still be liable for the widespread and persistent practice of sexual harassment which constitutes a custom.

511 F.3d at 1124–25. The Tenth Circuit in *Rost* addressed the proper test for when, in a § 1983 claim, a plaintiff asserts that the school "had a custom of acquiescing" to sexual harassment, but the plaintiff "does not contend that the district had an official policy or that a decision was made by an official with final policymaking authority." *Id.* at 1125. The Tenth Circuit described this

---

[6]        The parties have not provided any case law on this issue other than *Fitzgerald*, and this Court has not located any binding case law to offer further guidance, but this ruling is in accordance with those of other district courts. *See, e.g.*, *M.S v. Twin Valley Sch. Dist.*, No. 15-5733, 2016 U.S. Dist. LEXIS 190850, at *33 (E.D. Pa. June 14, 2016) ("Plaintiffs' claims under § 1983 cannot proceed because § 1983 does not offer a route to recovery for a violation of Title IX."); *Doe v. Town of Stoughton*, 917 F. Supp. 2d 160, 165–66 (D. Mass. 2013) ("However, the Court in *Fitzgerald* never directly considered the statutory § 1983claim, and the language is quite deliberate.").

position as one of municipal liability based on "the custom of failure to receive, investigate, or act on complaints of constitutional violations." *Id.* In this situation,

> a plaintiff must prove (1) a continuing, widespread, and persistent pattern of misconduct by the state; (2) deliberate indifference to or tacit authorization of the conduct by policy-making officials after notice of the conduct; and (3) a resulting injury to the plaintiff.

*Id.*(citation omitted).

Plaintiff again references the lack of Title IX policies, this time as evidence supporting her constitutional claim. Plaintiff argues that the lack of Title IX policies shows a "policy and/or custom of not reasonably investigating and ending teacher on student sexual harassment." Doc. 42, ¶ 113. Plaintiff argues that CNM's "lack of Title IX policies and a Title IX coordinator is analogous to the adoption of sexual harassment policies that are indifferent to the risk of sexual harassment." Doc. 49 at 20. She states that the lack of Title IX policies and a coordinator "constituted a policy against having clear policies and procedures for handling teacher-on-student sexual harassment, including against providing clear guidance to students about how to, and to whom, report misconduct, and clear guidance to employees, such as Defendant Coultas-Kay and Crandall, about what to do with such complaints." Doc. 49 at 21. Plaintiff therefore appears to argue that an official policy and a custom were in place, so the Court will address both standards.

Plaintiff has failed to plausibly allege facts to show that a lack of Title IX policies amounts to the adoption of an official policy that is indifferent to the risk of sexual harassment. *See Murrell*, 186 F.3d at 1249 (providing this standard). Plaintiff has not pointed to any facts showing that the lack of Title IX procedures involved a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers." *Id.* at 1249. Furthermore, Plaintiff's own facts also allege that CNM's policy is that an investigation cannot commence until campus security takes a formal incident report (Doc. 42, FAC, ¶ 95), which does amount to a clear

policy of investigating sexual harassment reports. Plaintiff claims this policy is "not reasonable" (Doc. 42, FAC, ¶ 95), but this policy is not plausibly indifferent to the resolution of sexual harassment complaints because it requires the initiation of an investigation itself. Plaintiff's own complaint was investigated, and Tutor resigned after she made her report to campus security. Plaintiff has not adequately pleaded an "official policy," as she has mostly pleaded the absence of one.

Alternatively, in the absence of an official policy, a plaintiff may allege municipal liability for sexual harassment by showing it was so "widespread and pervasive so as to constitute a 'custom.'" *Id.* at 1250. Taking Plaintiff's allegations, including the lack of Title IX policies, as true, Plaintiff has alleged facts sufficient to plead under § 1983 that there was a custom of failing to investigate sexual harassment and assault complaints. While the lack of Title IX policies alone is insufficient to plead a § 1983 claim (see discussion above), the allegations of the lack of Title IX policies and the failure of the institution to respond to Plaintiff's complaints in several instances support Plaintiff's argument about a custom.

Plaintiff relies on her factual allegations that Coultas-Kay and Crandall failed to take any action in response to her complaint to Coultas-Kay, as discussed above. Plaintiff also points to the unacknowledged voicemail to CNM Human Resources on May 20, 2015 (Doc. 42, FAC, ¶ 41) and the unacknowledged email to the Dean of Students on the same day (Doc. 42, FAC, ¶ 42). Additionally, Plaintiff alleges that "[o]n information and belief, Tutor has a past history of engaging in inappropriate, predatory conduct with female students at CNM, with CNM's knowledge and acquiescence." Doc. 42, ¶ 51. Plaintiff also points to the Pre-Termination Notice that Tutor received prior to his resignation on June 11, 2015, which she claims referenced Tutor's "ongoing pattern of questionable conduct and extremely poor judgment." Doc. 42, FAC, ¶ 49.

Based on these factual allegations, Plaintiff argues that "the fact that these requests for assistance were ignored was indicative of CNM's policy of not having a coordinated way of responding to teacher-on-student sexual harassment." Doc. 49 at 22.

Plaintiff has pleaded facts sufficient to state a claim for a violation of Equal Protection under § 1983 based on a widespread institutional custom of failing to investigate or respond to sexual harassment complaints. *See Rost*, 511 F.3d at 1124–25. Plaintiff pleads factual allegations about several instances in which she claims her complaints were not acknowledged or addressed by individuals at the institution, including the Dean of Students. Additionally, the alleged lack of Title IX policies permits a reasonable inference that there was widespread confusion about the institution's procedures for handling sexual harassment reports, as well as deliberate indifference or tacit authorization by policy makers regarding the failure to address such reports. The factual allegations about several institutional failures to respond by the named individual defendants, in combination with the alleged lack of Title IX policies, support a reasonable inference in Plaintiff's favor that there could have been systemic failures by the institution and its policy makers to reasonably investigate complaints of sexual harassment. **Plaintiff has stated a claim for violation of Equal Protection under § 1983 against Defendant CNM.**

### C. Qualified immunity

Defendants have also asserted the defense of qualified immunity, which "is designed to shield public officials from liability and ensure that erroneous suits do not even go to trial." *Albright v. Rodriquez*, 51 F.3d 1531, 1534 (10th Cir. 1995) (quotation marks and citations omitted). "In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct."

*Estate of Lockett v. Fallin*, 841 F.3d 1098, 1107 (10th Cir. 2016); *see Doe v. Woodard*, No. 18-1066, 2019 U.S. App. LEXIS 112, at *9 (10th Cir. Jan. 3, 2019) ("Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law."). The trial court "has discretion to determine which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (citation omitted).

This qualified immunity analysis hinges on the "clearly established" prong, as the Court has already found that Plaintiff has alleged facts sufficient to plead a constitutional violation against CNM. *See* discussion above. A state actor's conduct "violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Estate of Lockett*, 841 F.3d at 1107. The plaintiff must show there is a "Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011) (quotations omitted). Qualified immunity "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate[]" for a right to be clearly established. *Estate of Lockett*, 841 F.3d at 1107 (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).

Plaintiff only points to the ruling in *Murrell*, in which the Tenth Circuit reversed the grant of qualified immunity to two high school teachers and the school principal who had been shown to have actual knowledge of sexual abuse by one student against another student. *See Murrell v. School Dist. No. 1*, 186 F.3d 1238 (10th Cir. 1999). The victim in *Murrell* was a minor student

who was repeatedly sexually assaulted on school property by another student, and the assailant was a student who was also appointed a position as a "janitor's assistant," through which he gained access to various parts of the school. *Id.* at 1243–44. The teachers told the victim to not tell her mother about the sexual assaults and to forget that the sexual assaults happened, and the principal failed to investigate or do anything to stop further abuse from occurring, which satisfied the deliberate indifference standard. 186 F.3d at 1243–44, 1251–52. In reversing the district court's ruling that granted qualified immunity, the Tenth Circuit stated that "it has been clearly established since at least 1992 that a person who exercises the state's supervisory authority may be held liable for consciously acquiescing in sexually harassing conduct by a non-state actor over whom the state actor has authority." *Id.* at 1251. The Circuit also stated, "Applying this test, the fact that we have said other supervisory municipal employees may be held liable under the Fourteenth Amendment for deliberate indifference to the discriminatory conduct of third parties was sufficient to make apparent the unlawfulness of such deliberate indifference by a school employee exercising supervisory authority over students." *Id.*

The parties agree that *Murrell* was the law in the spring of 2015, but the issue is whether the ruling from *Murrell* states the applicable rule in Plaintiff's case. Plaintiff argues that *Murrell* clearly established the law "sufficient to make apparent that a school employee exercising supervisory authority over a school teacher, Defendant Vanderploeg, could be liable for deliberate indifference to that teacher's discriminatory conduct." Doc. 49 at 16. Defendants maintain that "[n]one of the defendants would have any reason to believe that they would be held to a standard enunciated in the context of student-on-student harassment in a high school." Doc. 53 at 10.

A distinguishing fact in *Murrell* is that the state actors were high school representatives with supervisory authority over the assailant who was a *student*, and Plaintiff's case is in the

context of an alleged assailant who was a *tutor employee* on a college campus. The Circuit found that the teachers and principals described in *Murrell* had obvious disciplinary authority over students, as the principal was the highest-ranking administrator and the teachers could have taken appropriate measures to halt the abuse by the student. 186 F.3d at 1247–48 (specifying that under *Davis*, a school official with authority over students can "halt known abuse, perhaps by measures such as transferring the harassing student to a different class, suspending him, curtailing his privileges, or providing additional supervision"). Although the assailant in *Murrell* was also "appointed" as a "janitor's assistant," this fact would not make him an employee in the same sense as Plaintiff has alleged Tutor was, and as Plaintiff has not alleged Tutor was a student. Plaintiff has alleged Coultas-Kay and Crandall had supervisory authority to take corrective measures, such as to suspend Tutor (Doc. 42, ¶¶ 83, 86), but the disciplinary scheme between Coultas-Kay and Crandall with Tutor, a non-student employee, is not clearly analogous to that of high school teachers and principals to a student. The same is truer of Dean Garcia as Dean of Students and Montoya in Human Resources. The Tenth Circuit does not require that "the very action in question has previously been held unlawful[,]" 186 F.3d at 1251, but the context Plaintiff presents involves a different supervisory structure between adults who are college employees, yet not equally so, than the high school student-teacher dynamic outlined in *Murrell*.

Another distinguishing fact from *Murrell* is the allegation of extensive cover-up by the school officials of the sexual abuse, which Plaintiff has not gone so far as to allege here. The Circuit's ruling that the principal's actions, in refusing to investigate the matter, refusing to return the mother's calls, and suggesting the victim consented despite knowing the assailant admitted to the assaults, were deliberately indifferent does not make apparent the unlawfulness of Coultas-Kay and Crandall's conduct in this case. The two high school teachers in *Murrell* were also alleged

to not only have refused to remedy the harassment, but also to have concealed it, which Plaintiff has not alleged Coultas-Kay and Crandall did in her case. The allegations comprising the claim of deliberate indifference in *Murrell* were so distinct from the conduct alleged here such that Coultas-Kay and Crandall's conduct was not obviously unreasonable based on the ruling in *Murrell*. Again, the same is true of a Human Resources representative in Montoya's position and an official in Dean Garcia's position as Dean of Students because *Murrell* does not clearly establish that their failures to acknowledge Plaintiff's email or phone call violated Plaintiff's rights.

The Court agrees with CNM Defendants that the rule from *Murrell* does not clearly establish Plaintiff's right "beyond debate," to the extent that the every reasonable supervisor in a university educational program outside the traditional teacher-student dynamic would have known it was a violation of the law to fail to act on a complaint of sexual harassment made by an adult student against a tutor employee. *See Doe v. Woodard*, No. 18-1066, 2019 U.S. App. LEXIS 112, at *9 (10th Cir. Jan. 3, 2019) ("Individual defendants named in a § 1983 action may raise a defense of qualified immunity, which shields public officials from damages actions unless their conduct was unreasonable in light of clearly established law."). Plaintiff has not shown that the ruling in *Murrell* defined the "contours" her right so clearly "that every reasonable official would have understood that what he is doing violates that right." *Estate of Lockett*, 841 F.3d at 1107. **Defendants Coultas-Kay, Crandall, Garcia, and Montoya are entitled to qualified immunity in the suits against them in their individual capacities under § 1983.**

### D. Official capacity claims against CNM Defendants

CNM Defendants Coultas-Kay, Crandall, Montoya, Garcia, and Winograd have also moved to have the § 1983 claims against them in their official capacities dismissed on the grounds that those claims are duplicative of the claim against the school. Doc. 53 at 9. Defendants note that

the Supreme Court has explained that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In *Graham*, the Supreme Court explained that under *Monell*, "there is no longer a need to bring official-capacity actions against local government officials" when the government entity can be sued directly for damages and injunctive or declaratory relief. 473 U.S. at 167 n.14. These official capacity claims are redundant with the claims against CNM, and tthe official capacity claims against CNM Defendants Coultas-Kay, Crandall, Montoya, Garcia, and Winograd are therefore properly dismissed.

### E.     Title IX claims against individual CNM Defendants

To the extent that Plaintiff has attempted to state a claim for a violation of Title IX in Count 2 against the individual CNM defendants—namely, Coultas-Kay, Crandall, Montoya, Garcia, and Winograd—Plaintiff has failed to state a claim. The Supreme Court has ruled that Title IX does not provide for a private cause of action against individuals, as it creates a right enforceable against educational institutions only. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) ("Title IX reaches institutions and programs that receive federal funds . . . but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals.").

### F.     Punitive damages and pre-judgment interest

The parties' arguments about punitive damages and pre-judgment interest are premature at this stage on a motion to dismiss for failure to state a claim. The Court declines to rule on these damages issues at this time, and the parties may raise their arguments again at a more appropriate procedural stage.

### CONCLUSION

Accordingly, for the reasons stated in this Memorandum Opinion and Order, *CNM Defendants' Amended Motion to Dismiss Counts 1 and 2 of Plaintiff's First Amended Complaint*

*and for Qualified Immunity* **(Doc. 44, filed 7/26/18)** is **GRANTED IN PART and DENIED IN PART**, as follows:

1. Defendant CNM's Motion to Dismiss **Count 1** (Title IX) for failure to state a claim is **DENIED**.

2. Defendant CNM's Motion to Dismiss **Count 2** – Section 1983 based on Equal Protection – for failure to state a claim is **DENIED**.

3. In their individual capacities, Defendants Coultas-Kay, Crandall, Montoya, and Garcia's Motions to Dismiss **Count 2** (Section 1983) for qualified immunity are **GRANTED**.

4. In their official capacities, Defendants Coultas-Kay, Crandall, Montoya, Garcia, and Winograd's Motions to Dismiss **Count 2** (Section 1983) are **GRANTED**.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE